# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---------------------------------

|  |  |  |
|---|---|---|
|  | ) |  |
| JOHN EVANS | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 04-10323-RWZ |
|  | ) |  |
| PAUL VERDINI | ) |  |
| Respondent. | ) |  |

---------------------------------)

## RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITION FOR HABEAS CORPUS

This memorandum of law is submitted in opposition to the petition for a writ of habeas corpus filed by John Evans ("the petitioner"). As argued in this memorandum, the petition must be denied where the petitioner cannot demonstrate that the state court's adjudication of his claim on the merits resulted in a decision that was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, or an unreasonable determination of the facts in light of the evidence presented in the state court.

## PRIOR PROCEEDINGS

On February 21, 1995, a Suffolk County grand jury indicted the petitioner on a charge of first-degree murder, two charges of illegally possessing ammunition, one charge of illegally discharging a firearm within five hundred feet of a building, and two charges of illegally possessing a fiream (S.A. 1, p. 4).[1] From October 28 through November 8, 1996,

---

[1] The respondent's supplemental answer will be referred to as (S.A.--), the further supplemental answer by volume and entry as (F.S.A. --/--), and the trial transcript, which is included in the FSA by volume and page number as (Tr. --/--).

the petitioner was tried before a jury, Banks, J., presiding (S.A. 1, p. 6-7).[2]  On November

8, 1996, the jury found the petitioner guilty of first-degree murder on the theories of

deliberate premeditation and extreme atrocity, and cruelty and guilty on the remaining

indictments (S.A., p. 7).  Justice Banks sentenced the petitioner to the mandatory term of

life imprisonment on the murder conviction, and to concurrent terms of four to five years

for illegally possessing a firearm (S.A. 1, p. 8).  The remaining convictions were placed on

file with the petitioner's consent (S.A. 1, p. 8).  The petitioner filed a timely notice of appeal

(F.S.A. V/1, p. 22).

On November 17, 1998, the petitioner filed a motion for new trial (S.A. 1, p. 9; F.S.A.

V/1, pp. 23-140).  On July 1 and September 27, 1999, Justice Donovan conducted a non-

evidentiary hearing on the motion (S.A. 1, p. 9).  On December 30, 1999, Justice Donovan

denied the motion in a written memorandum and order (S.A. 1, p. 10; F.S.A. V/2, pp. 475-

501).  The petitioner filed a timely notice of appeal from the denial of his motion for new

trial (F.S.A. V/2, pp. 502-503).

The petitioner's direct appeal to the Supreme Judicial Court, pursuant to G.L. c. 278,

§ 33E was consolidated with his appeal from the denial of his motion for new trial.  He

claimed the following errors on appeal: 1) newly available material and exculpatory

evidence merits a new trial after an evidentiary hearing; 2) the trial judge interfered with the

defendant's constitutional right to cross-examination when he barred the defendant from

naming the charges pending against a key Commonwealth witness; 3) the trial judge

constructively prevented the direct examination of Eddie Hawkins and deprived the

---

[2]  The petitioner was tried jointly with his brother, Jimmy, and two other co-
defendants.

defendant of his constitutional right to defend himself; 4) the trial judge erroneously admitted a witness's statements to police investigators and his grand jury testimony; 5) the prosecutor made improper and prejudicial remarks in closing argument; 6) ineffective assistance of counsel; 7) errors regarding the indictments for an unrelated charge amounted to ineffective assistance of counsel and deprived the defendant of a fair trial; and 8) trial counsel's failure to investigate and develop forensic evidence amounted to ineffective assistance of counsel. The Supreme Judicial Court affirmed the petitioner's convictions and the denial of his motion for new trial on April 16, 2003 (S.A. 5). 439 Mass. 184, 786 N.E.2d 375 (2003).

On February 17, 2004, the petitioner filed a petition for writ of habeas corpus in this court. On March 22, 2004, the respondent filed an Answer and Supplemental Answer. On May 21, 2004, the petitioner filed a further supplemental answer. On September 13, 2004, the petitioner filed a memorandum of law in support of his petition for writ of habeas corpus.

## STATEMENT OF FACTS

The Massachusetts Supreme Judicial Court's recitation of the facts of the petitioner's crimes is entitled to the presumption of correctness under 28 U.S.C. §2254(e)(1). *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *Coombs v. Maine*, 202 F.3d 14, 18 (1sr Cir. 2000). The AEDPA presumption of correctness applies to all "basic, primary, or historical facts" underlying the state court's conclusion. *Gunter v. Maloney*, 291 F.3d at 76; *Sanna v. DiPaolo*, 265 F.3d at 7. In addition, the presumption of correctness extends to factual

3

determinations made by both state trial and appellate courts. *Rashad v. Walsh*, 300 F.3d 27, 34 (1st Cir. 2002), and to any factual findings implicit in the state court's ruling. *LaVallee v. Delle Rose*, 410 U.S. 690, 692 (1972); *Weeks v. Snyder*, 219 F.3d 245, 258 (3d Cir.), *cert. denied*, 531 U.S. 1003 (2000). As the First Circuit has noted, "[a] habeas petitioner must clear a high hurdle before a federal court will set aside any of the state's factual findings." *Mastracchio v. Vose*, 274 F.3 590, 598 (1st Cir. 2001). The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254 (e)(1).

The Supreme Judicial Court found the following facts concerning the petitioner's crimes:

> At about midnight on January 24, 1995, the victim, Lyle Jackson, went to Cortee's, a nightclub in the Dorchester neighborhood of Boston, where he met a friend, Marcello Holliday. The defendants [petitioner and his brother, Jimmy] were at the same nightclub with two friends, Robert Brown and Ronald Tinsley. At approximately 1:45 A.M. on January 25, the victim, Holliday, and another friend left to go to a nearby fast-food restaurant, Waliakum's. As they were in their car preparing to leave, John ran past their car and fired a handgun three or four times at a group of people on the other side of the street.
>
> The victim, Holliday, and their friend arrived at Walaikum's at approximately 2:20 A.M. The restaurant, which occupies a small space, was crowded with customers. About fifteen minutes later the defendants and their two companions entered the restaurant, looked around for about one minute or so, and walked out. Less than one minute later, they reentered. Tinsley talked with a girl standing behind Holliday, and the other three remained near the door. Brown said to the defendants, "That's one of them right there." Jimmy asked, "Is that him right there?" Brown said, "Yeah." Jimmy then produced a silver handgun with a black handle. John was standing right beside him. Jimmy walked toward the victim, who seeing him approach, with a gun drawn, began to back away. Holliday ran outside, The victim fell over some chairs and tables as he backed away, then crawled into a corner and begged Jimmy for his life. Jimmy shot him four or five times.
>
> Alton Clarke, a patron of the restaurant, tried to leave but was confronted by John, who was armed with a black handgun. Clarke was allowed to leave after he said

he had nothing to do with the victim.  John then approached the victim and fired a shot at him.  Clarke heard the shot from outside the restaurant and said it sounded different from the shots he heard when he was inside.  Willy Wiggins, who owned Walaikum's, saw the first gunman shooting at the victim, then went to the back of the restaurant to telephone the police.

The defendants, Brown and Tinsley fled the scene in a gold Lexus automobile.  John drove, Jimmy sat in the front passenger seat, and the other two sat in the back.  Police arrived and pursued them.  At one point a marked police cruiser with its blue lights flashing was forced off the road to avoid a head-on collision with the Lexus.  During the chase two guns were thrown out of the front passenger window of the Lexus.  The Lexus turned up a dead end street and stopped.  The occupants were apprehended as they tried to flee on foot.  The two guns thrown from the Lexus were recovered.  One was a silver-plated nine millimeter Ruger semiautomatic handgun with a black handle.  The other was a black nine millimeter Heckler & Koch semiautomatic handgun.  Ballistics evidence recovered from both inside and outside the restaurant included six shell casings (three from the Ruger, and three from the Heckler & Koch), and four bullet fragments (two from the Ruger, and two from the Heckler & Koch, including a projectile removed from the victim's body).  No identifiable fingerprints could be retrieved from either gun.

The victim died from an infection due to his wounds.  He had been shot three times.  One shot passed through his left forearm and into his ribs.  Two shots entered the left side of his abdomen and passed through his body.  A fourth was recovered from his body.  The victim had no gunpowder residue on his clothes, indicating that he had been shot from a distance of at least three feet.

The four men were tried together on a theory of murder by joint venture.  Both John and Jimmy testified, but neither Brown nor Tinsley testified.  The jury found the defendants guilty, and acquitted Brown and Tinsley.

*Commonwealth v. Evans*, 439 Mass. 184, 186-188, 786 N.E.2d 375, 381-382 (2003) (S.A. 5).  Other findings of fact by the SJC will be recited herein as they relate to specific issues raised by the petitioner.

## ARGUMENT

### Standard of Review

Habeas corpus review of claims previously adjudicated by state courts is both limited and highly deferential:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This "highly deferential standard for evaluating state-court rulings" reflects the overarching structure of the federal habeas corpus scheme, which vests "primary responsibility" for evaluating federal law claims raised in criminal trials in the state courts, courts which must be presumed in habeas corpus courts to know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24, 27 (2002) (per curiam). Thus, as the Supreme Court has repeatedly emphasized, it is not sufficient to warrant habeas corpus relief that the state court's decision was erroneous or incorrect. *Id.* at 27; *Williams v. Taylor*, 529 U.S. 362, 412 (2000). It is not even sufficient that the state court "failed to apply" Federal law clearly established by the Supreme Court, *Early v. Packer*, 537 U.S. 3, 10 (2002) (per

curiam), or that the state court committed "clear error," or that the reviewing court is of the "firm conviction" that the state court's ruling was erroneous.  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

Rather, federal courts must decline to intervene to disturb state court judgments unless petitioner demonstrates that his claim falls into one of the narrowly drawn categories set forth in the statute.  "Under § 2254(d)(1), the writ may only issue if one of . . . two conditions is satisfied . . . ."  *Williams*, 529 U.S. at 412.  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  *Id*. at 412-13.  The analysis under the "unreasonable application" clause is distinct, and relief is available only if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.  To be entitled to relief under the latter clause, the burden is on petitioner to show that the state court decision applied the clearly established law in an "objectively unreasonable" manner.  *Id*. at 409-10.  Since "[a]pplying a general standard to a specific case can demand a substantial element of judgment," "[t]he more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."  *Yarborough v. Alvarado*, 124 S. Ct. 2140, 2149 (2004).  The clearly established law that is relevant to the analysis under § 2254(d)(1) is limited to the holdings of United States Supreme Court cases extant at the time of the state court decision, and does not include the dicta of such cases.  *Id*. at 2147; *Williams*, 529 U.S. at 412.

Factual determinations of state courts are granted similar deference. To satisfy § 2254(d)(2), a petitioner must show that the state's factual determination was objectively unreasonable. *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 399 (2000)). Objective unreasonableness is not merely an incorrect or erroneous decision. *Williams*, 529 U.S. at 410; *see also Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003) ("petitioner's challenge to a decision based on a factual determination will not succeed if the petitioner merely evidences that the state court committed error. Instead, he must further establish that the state court committed unreasonable error."); *Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003) ("federal habeas court may not grant habeas relief under § 2254(d)(2) merely because it disagrees with a state trial court's factual determination").

Moreover, § 2254(d)(2) must be interpreted in conjunction with § 2254(e)(1), which specifies both that "a determination of a factual issue made by a State court shall be presumed to be correct," and that "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Sanna v. DiPaolo*, 265 F.3d 1, 7. *See also Miller-El,* 537 U.S. at 341 (noting that to prevail under § 2254(d)(2), habeas petitioner must both disprove the factual finding by clear and convincing evidence and demonstrate that the court's factual determination was objectively unreasonable).

8

I.    **THE SJC'S DECISION AFFIRMING THE TRIAL JUDGE'S DECISION TO LIMIT THE TESTIMONY OF A POTENTIAL DEFENSE WITNESS WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED SUPREME COURT LAW WHERE THAT WITNESS'S PRIOR STATEMENT TO POLICE WAS INADMISSIBLE HEARSAY.**

The petitioner claims that the trial judge improperly limited his proposed examination of defense witness Eddie Hawkins and thereby violated his right to present a defense. Hawkins had made a pretrial statement to police that Tinsley had admitted shooting the victim while he and Hawkins were sharing a jail cell. *Commonwealth v. Evans*, 439 Mass. at 192, 786 N.E.2d at 384; (Tr. X/15, 18-20).  The judge's ruling that defendant was not permitted to ask Hawkins about the statement "came after a voir dire hearing in which Hawkins repudiated his prior statement." *Id*. (Tr. X/31-33).   "He testified during voir dire that Tinsley had not told him that he shot the victim, and that he fabricated the statement he gave police with the hope of gaining favorable treatment in his own pending case." *Id*. As a result of the ruling, the defendant did not call Hawkins to testifty. *Id*. On this issue, the SJC found:

> Hawkins's prior statement to police was hearsay, and the defendants have not shown that the hearsay fell within an exception to the hearsay rule. *See Commonwealth v. Semedo*, 422 Mass. 716, 727-728, 665 N.E.2d 638 (1996). The defendants also have not shown that Hawkins's statement to police was inconsistent with any relevant testimony he would have given that would have permitted them to use statement to impeach him.  From Hawkins's voir dire testimony, the judge could properly conclude that, if called, Hawkins would offer no testimony relevant to any issue being tried, and therefore he could not be called solely for the purpose of being impeached by a prior inconsistent statement that was otherwise inadmissible. *See Commonwealth v. McAfee*, 430 Mass. 483, 489-490, 722 N.E.2d 1 (1999). In addition, in light of Hawkins's testimony that the statement was not true and that he had made it up because he was motivated by self-interest, the defendants have not shown that Hawkins's statement to police was so reliable and trustworthy that, although hearsay, its exclusion might offend their constitutional right to present a defense. *Id*. at 491 n.3, 722 N.E.2d 1.  There was no error in the exclusion of Hawkins's statement to police.

> In any event, exclusion of the desired testimony could not have prejudiced the defendants. The Commonwealth proceeded against them at trial under the theory that they were joint venturers as well as principals. Tinsley's purported admission that he was one of the shooters was consistent with the Commonwealth's theory. Jimmy admitted in his testimony that he fired the Ruger; Holliday had testified that all four men appeared to be acting in concert inside the restaurant

*Commonwealth v. Evans*, 439 Mass. at 193, 786 N.E.2d at 385.

The petitioner points to no specific Supreme Court authority (and there is none), to support his claim that he has an unfettered right to present evidence in support of his theory that Tinsley was the shooter. To the contrary, the Supreme Court has clearly established that "a defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U. S. 303, 308 (1998). *See Taylor v. Illinois*, 484 U. S. 400, 410 (1988); *Rock v. Arkansas*, 483 U. S. 44, 55 (1987). Indeed, a defendant's interest in presenting evidence may thus "'bow to accommodate other legitimate interests in the criminal trial process.'" *United States v. Scheffer*, 523 U. S. at 308; *Rock v. Arkansas*, 483 U. S. at 55, *quoting Chambers v. Mississippi*, 410 U. S. 284, 295 (1973). *See Michigan v. Lucas*, 500 U. S. 145, 149 (1991). More specifically, "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U. S. at 308, *quoting Rock v. Arkansas*, 483 U. S. at 56.

In this case, the SJC's ruling on this issue was not contrary to the above-cited Supreme Court precedent where the court clearly relied on the hearsay rule- a legitimate rule of evidence- in upholding the trial judge's decision to exclude Hawkins's prior

statement.  All of the cases on which petitioner relies recognize that a defendant's right to present relevant evidence has limitations.  "The hearsay rule, which has long been recognized and respected by virtually every State, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact." *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973).  *See also Rock v. Arkansas,* 483 U.S. 44, 55 (1987), quoting *Chambers*, 410 U.S. at 295  ("the right to present relevant testimony is not without limitation"); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability-- even if the defendant would prefer to see that evidence admitted").  Therefore, the SJC's decision was not contrary to the foregoing caselaw.

Nor was the SJC's decision an unreasonable application of the relevant Supreme Court precedent.   In light of the fact that he repudiated his prior statement, Hawkins had no relevant testimony to offer and could not be called merely so he could be impeached with his prior statement, which was inadmissible hearsay.  As the SJC found, Hawkins did not have any personal knowledge of the shooting, and his statement was not reliable in light of his later denial of it. *Commonwealth v. Evans*, 439 Mass. at 193, 786 N.E.2d at 385.   Therefore the court's exclusion of his testimony was a reasonable application of the Supreme Court precedent that upholds the petitioner's right to present a defense but acknowledges that this right has reasonable exceptions.

This is unlike the situation in *Washington v. Texas*, 388 U.S. 14, 16, in which the petitioner sought to call a co-defendant, who was the only person other than the petitioner

11

who knew who had fired the fatal shots.  Two Texas statutes provided that persons charged or convicted as co-participants in a crime could not testify for one another. *Id*.  The Court found that these statutes violated the petitioner's Sixth Amendment right to present a defense where the co-defendant would have testified that the petitioner tried to persuade him to leave and ran away before the co-defendant fired the fatal shot, evidence that was clearly relevant and material to the defense.  *Id*. at 16, 23.  Hawkins's testimony was one step removed from actual knowledge of the shooting and without the prior statement to police  was not relevant or material to the petitioner's defense.  As the Supreme Court held in *Scheffer,* 523 U.S. at  308 (quoting *Rock v. Arkansas*, 483 U.S. at 56), evidentiary rules of exclusion, such as the hearsay rule "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' "  In this case, the trial judge properly implemented the hearsay rule to ensure that reliable evidence was presented to the jury.    This was an objectively reasonable application of Supreme Court law regarding a defendant's right to present a defense.  The petitioner is not entitled to habeas relief on this claim.

**II.    MARVETTE NEAL'S GRAND JURY TESTIMONY DID NOT HAVE A SUBSTANTIAL AND INJURIOUS EFFECT ON THE JURY'S VERDICT WHERE IT WAS CUMULATIVE TO OTHER TESTIMONY AND NEAL'S IMPEACHMENT BY A PRIOR INCONSISTENT STATEMENT WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF SUPREME COURT PRECEDENT WHERE CROSS-EXAMINATION OPENED THE DOOR TO SUCH IMPEACHMENT.**

The petitioner claims that the admission of Commonwealth witness Marvette Neal's testimony also violated his Sixth Amendment right to present a defense and was inconsistent with the ruling barring him from asking Hawkins about his prior statement to

police.[3]  See Argument I, *supra*.  Neal testified at trial that he knew the victim and the

Evans brothers, but could not remember whether he had seen the petitioner and his

brother at Cortee's or Walaikum's on the night of the shooting.  (Tr. IV/175, 181).  He also

testified that he did not remember what he had told the grand jury regarding his

observations on the night of the shooting, although he believed that he was truthful when

testifying before the grand jury (Tr. IV/184-186).  He also testified that he was interviewed

by Boston police sixteen days after the shooting (February 10, 1995), and flatly denied

telling the police at that time that the petitioner and his brother were the shooters (Tr.

IV/194-195).

On the next day of  trial, Detective Kenneth Dorch testified about Neal's February

10, 1995 statement, in which Neal identified the petitioner and his brother as the shooters

(Tr. V/15-24).   Prior to this testimony, the judge instructed the jury that Neal's prior

statement could not be considered evidence of what actually happened on the night of the

shooting, but only for evaluating the credibility of Neal (Tr. V/14-15).  He reminded the jury

of this instruction five times during Dorch's testimony (Tr. V/17, 20, 23, 24, 24-25).   The

SJC held that Dorch's testimony was properly admitted  to impeach Neal's testimony on

cross-examination that he had never seen the petitioner with a gun in his hand on January

24 or 25, 1995, and that he had not seen Jimmy Evans shoot anyone at Walaikum's.

*Commonwealth v. Evans*, 439 Mass. at 192, 786 N.E.2d at 384.

Two days later, Carol McCarthy, the court reporter who had recorded and

---

[3]  To the extent that the petitioner now argues that Neal's testimony itself was
error, this claim was not exhausted in the state court, where the petitioner claimed only
that the admission of Neal's grand jury testimony and Detective Dorch's testimony were
error.  See S.A. 2, pp.30-37).

transcribed Neal's grand jury testimony, affirmed that the transcript was accurate (Tr. VII/19-22, 25-26). Over objection, the prosecutor then recited the portions of Neal's grand jury testimony in which Neal claimed to have seen the petitioner and his brother at Cortee's and Walaikum's on the night of the murder (Tr. VII/23-26). The SJC held that since Neal claimed he had no memory of his grand jury testimony and did not adopt the substance of the testimony, it was improperly admitted under the past recollection recorded exception to the hearsay rule. *Commonwealth v. Evans*, 439 Mass. at 189, 786 N.E.2d at 382. The court went on to find the grand jury testimony was not prejudicial because it was merely cumulative of other testimony. *Id*. at 191, 786 N.E. 2d at 383. Both the petitioner and his brother had testified and admitted that they had been at Cortee's; Jimmy had admitted going into Walaikum's; Marcello Holliday saw the petitioner enter Walaikum's and Alton Clarke said the driver of the Lexus, who the petitioner admitted to be, had entered Walaikum's and shot the victim. *Id.*

The SJC's determination that Detective Dorch's testimony was proper impeachment evidence was not contrary to or an unreasonable application of clearly established Supreme Court precedent. It is clear that prior inconsistent statements are admissible to impeach a witness's testimony. *United States v. Hale*, 422 U.S. 171, 176 (1975). When Neal testified on cross-examination that he never saw the petitioner with a gun, he opened the door to impeachment through Dorch's testimony of Neal's prior statements. The judge carefully instructed the jury that they were only to consider the prior statements as to how it affected the credibility of Neal's testimony and reminded them of this several times during Dorch's testimony.

14

The SJC also reasonably determined that, although Neal's grand jury testimony was hearsay evidence and was improperly admitted, it was not prejudicial to the petitioner's case.  Confrontation Clause violations are trial type error that are subject to a harmless error analysis.  *See Cruz v. New York*, 481 U. S. 186, 194 (1987); *Sinnott v. Duval*, 139 F.3d 12, 14-15 (1st Cir. 1998).  On habeas review, this Court must determine whether the admission of Neal's grand jury statements had a substantial and injurious effect in determining the jury's verdict.  *See Brecht v. Abrahamson*, 507 U. S. 619, 637 (1993); *Kotteakos v. United States*, 328 U. S. 750, 776 (1946).  *See also Sinnott v. Duval,* 139 F.3d 12, 14-15 (1st Cir. 1998) ("The Supreme Court has made it clear that on collateral review of habeas cases involving trial error, the test for harmless error" is that set forth in Brecht).  Although the *Brecht* standard is more lenient toward the government than the beyond a reasonable doubt standard of *Chapman v. California*, 386 U. S. 18 (1967), it is the respondent's burden to establish harmlessness under *Brecht*.  *O'Neal v. McAninch*, 513 U. S. 432, 437-444 (1995).  As the SJC set forth, Neal's statements to the grand jury that he saw the petitioner in Walaikum's on the night of the shooting was merely cumulative of other witnesses who had already testified to that.  Their admission did not have a substantial and injurious effect on the jury's verdict.

III.    **THE SJC'S HOLDING THAT THE TRIAL JUDGE DID NOT ABUSE HIS DISCRETION IN LIMITING THE PETITIONER'S IMPEACHMENT OF A COMMONWEALTH WITNESS WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED SUPREME COURT LAW.**

The petitioner claims that his Sixth Amendment right to cross-examination was violated when the trial judge barred him from naming the specific charges pending against

15

a prosecution witness and instead allowed him to refer to the charges only as "serious felony charges."  The pending charges included aggravated rape and kidnapping, and the petitioner claims that without naming the specific crimes, he was unable to effectively portray the witness's bias.  On this issue, the SJC found:

> Where there is some evidence of bias, a defendant has a constitutional right to cross-examine a prosecution witness to show bias, but "the judge has broad discretion to determine the scope and extent of cross-examination." *Commonwealth v. Johnson*, 431 Mass. 535, 538, 728 N.E.2d 281 (2000).  Although it would ordinarily be helpful for the jurors to know the nature of the unresolved charges pending against a witness so that they will have some means of gauging the extent to which the witness may be biased, much must be left to the discretion of the trial judge in this area." *Commonwealth v. Lewis*, 12 Mass. App. Ct. 562, 573 n.20, 427 N.E.2d 934 (1981).
>
> The defendants were able to explore adequately the question and extent of Clarke's bias and motive to cooperate with the prosecution arising from the pending "serious felony" charges without referring to the specific charge.  Clarke testified emphatically that he was promised nothing and he expected nothing.  Clarke in fact later went to trial and was convicted of aggravated rape and kidnapping.  His convictions were reversed on appeal.  See Commonwealth v. Clarke, 48 Mass. App. Ct. 482, 722 N.E.2d 987 (2000).  the defendants have failed to show how the limitation on cross-examination was an abuse of discretion.

*Commonwealth v. Evans*, 439 Mass. at 188-189, 786 N.E.2d at 382.

The Supreme Court has held that "exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination," *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986), (quoting *Davis v. Alaska*, 415 U.S. 308, 316-317 (1974)), but also recognizes that a trial judge has the discretion to limit defense counsel's inquiry into the potential bias of a prosecution witness.  *Id.* ("trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant").  *See also Delaware v. Fensterer*, 474 U.S. 15, 20

(1985) (per curiam) ("the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish"). The trial judge in this case limited the evidence of the witness's pending charges in response to the prosecutor's argument that the aggravated rape charges facing the witness would be "disturbing and highly prejudicial" (Tr. VI/75). This decision was well within his discretion and was not contrary to the above clearly established Supreme Court law.

Nor was the SJC's opinion an unreasonable application of the Supreme Court precedent set forth above. On direct examination, the witness testified that he was not offered any leniency with regard to his pending charges, nor did he expect to anything in return for his testimony (Tr. VI/78-79). On cross-examination petitioner's counsel elicited the fact that the witness did not come forward and give a statement to police until six or seven months after he was indicted for "serious felony charges," some ten months after the shooting (Tr. VI/96-97, 99-100). Thus, the petitioner was given ample opportunity to examine the possible bias of the witness and to thereby infer to the jury that he had ulterior motives for coming forward at the time he did. This situation stands in stark contrast to *Van Arsdall* and *Davis, supra*, on which the petitioner relies, in which the court prohibited any inquiry into the witness's bias and thereby violated the defendant's constitutional confrontation rights. In *Davis*, 415 U.S. at 319, the trial court prohibited the defendant from asking a prosecution witness whether he was on probation in a juvenile matter, and in *Van Arsdall*, 475 U.S. at 679, the trial court prohibited *all* inquiry into the possibility that a prosecution witness would be biased as a result of the State's dismissal of his pending public drunkenness charge. The limitation that the trial judge implemented in this case did not raise the same concerns as in those cases and was therefore an objectively

reasonable application of Supreme Court caselaw. The petitioner is not entitled to habeas relief on this claim.

## IV.  THE SJC'S DETERMINATION THAT PETITIONER RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF SUPREME COURT PRECEDENT WHERE TRIAL COUNSEL MADE A REASONABLE STRATEGIC DECISION NOT TO MOVE TO SEVER THE DEFENDANTS.

The petitioner claims that his Sixth Amendment right to effective assistance of counsel was violated when his counsel failed to seek severance from co-defendant Robert Brown, so that Brown could have testified for him and bolstered his defense. Brown invoked his Fifth Amendment right not to testify and the petitioner was therefore unable to call him as a witness. On this issue, the SJC found:

> There is no merit to John's claim that counsel should have moved to sever the trial of his indictments from those of Robert Brown so that Brown could have been tried first and acquitted, and then could have testified for him at John's trial.[4] There is nothing in the record to show that counsel knew or could have known before trial that Brown would have been tried first, that Brown would have been acquitted, or that Brown would have testified favorably for John if the cases had been severed. *See United States v. Drougas*, 748 F.2d 8, 19 (1st Cir. 1984). Moreover, counsel could not have shown a bona fide need for Brown's testimony, because he expected that Willie Wiggins would testify that John was not inside Walaikum's, and it is likely that he knew Jimmy would testify, as he did, that John and Brown were outside Walaikum's during the shooting. *See id.* Had a motion to sever been

---

[4]  Brown declined to file an affidavit, but appellate counsel for John did file an affidavit in which he states that he spoke to Brown and his attorney. He indicates that Brown said he and John were outside Walaikum's during the shooting. He heard gunshots, then saw people running out and away from Walaikum's. He and John entered the Lexus. He asked John to drive away, but John would not leave without his brother. Ronald Tinsley and Jimmy then entered the Lexus and they all drove away. Counsel states that Brown told him that he would have testified to these facts at John's trial if he (Brown) had been tried first. The affidavit of counsel constitutes inadmissible hearsay as to Brown's assertions and need not be considered. *See Commonwealth v. Francis*, 432 Mass. 353, 372, 734 N.E.2d 315 (2000). (footnote in opinion).

presented, the judge would have acted within his discretion if he denied the motion. The defendant has failed to show that counsel had a basis to move for severance that would have outweighed the public interest in promoting the efficient administration of justice by joinder. *See Commonwealth v. Clarke*, 418 Mass. 207, 217, 635 N.E.2d 1197 (1994).

*Commonwealth v. Evans*, 439 Mass. at 197-198, 786 N.E.2d at 388.

In analyzing this claim pursuant to M.G.L. c. 278, § 33E, the SJC did not limit its review of the allegations of ineffective assistance of counsel to the adequacy of trial counsel's performance, but considered whether any "error in the course of the trial (by defense counsel, the prosecutor, or the judge) . . . was likely to have influenced the jury's conclusion." *Commonwealth v. Evans*, 439 Mass. at 195, 786 N.E.2d at 386 (quoting *Commonwealth v. Wright*, 411 Mass. 678, 682, 584 N.E.2d 621 (1992)). This standard is more favorable to a defendant than the standard of review for ineffective assistance under *Strickland v. Washington*, 466 U.S. 668, 694 (1984), under which a defendant must show that but for the unprofessional errors of counsel, the result of the proceeding would have been different. Where the petitioner received a higher standard of review than he was entitled to, the decision was not contrary to clearly established Supreme Court law.

Nor was the SJC's decision on the petitioner's ineffective assistance claim an unreasonable application of *Strickland*. In *Strickland*, the Supreme Court established that a violation of the right to effective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

Under the performance prong of *Strickland*, a party claiming ineffective assistance must prove that counsel's performance fell below an "objective standard of reasonableness." *Id.* at 687-88. There is a "strong presumption" that counsel's strategy

19

and tactics fall "within the range of reasonable professional assistance," and courts should avoid second-guessing counsel's performance with the use of hindsight. *Id.* at 689. As the Supreme Court has explained, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction. . . , and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. It is only where, given the facts then existing, counsel's "choice was so patently unreasonable that no competent attorney would have made it," that the ineffective assistance prong of *Strickland* may be satisfied. *Phoenix v. Matesanz*, 233 F.3d 77, 82 n.2 (1st Cir. 2000).

Under the prejudice prong of *Strickland*, a party claiming ineffective assistance must show "that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Not all errors by counsel are sufficient to satisfy this standard. *Id.* at 693. Rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Supreme Court has described this as a "highly demanding" and "heavy burden." *See Williams v. Taylor*, 529 U.S. 362, 393 (2000). A defendant's failure to satisfy one prong of the *Strickland* analysis renders it unnecessary for a court to consider the remaining prong. *Strickland*, 466 U.S. at 697.

In this case, the petitioner has failed to satisfy either prong of the *Strickland* standard. The court considered the petitioner's allegation in the context of what happened at trial and reasonably determined that petitioner's counsel had a strategic reason for failing to request that the defendants be severed. As the court found, there was no way to predict that Brown would be tried first or that he would be acquitted. The petitioner did not include an affidavit from Brown with his motion for new trial, so the content of Brown's proposed testimony was unsubstantiated. *See Commonwealth v. Evans*, 439 Mass. at 197 n.6. Moreover, in light of the fact that petitioner's counsel knew Brown's testimony would

20

be cumulative of testimony that he expected Willie Wiggins, owner of Walaikum's, and Jimmy Evans to give, he had no bona fide basis for moving to sever so that Brown could testify. In fact, both Willie and Jimmy testified that the petitioner never entered Walaikum's on the night of the shooting (Tr. VIII/190-191; IX/16, 21) and Jimmy testified further that the petitioner did not know that Jimmy had a gun until they had driven away from Walaikum's (Tr. IX/24). Given the speculation that was involved in whether and to what extent Brown would testify for the petitioner, and where the Commonwealth was pursuing a joint venture theory against all four defendants, the trial judge would have been justified in denying a motion to sever based on this ground. The motion judge was later justified in rejecting the petitioner's ineffective assistance claim and finding petitioner's counsel's strategy with respect to the motion to sever (see counsel's affidavit, S.R.A. V/1, pp. 251-254) manifestly reasonable. (S.R.A. V/2, pp. 251-254).

Although the SJC applied the more favorable standard under G.L. c. 278, § 33E in finding that defense counsel's failure to move for severance did not influence the jury's verdict, it implicitly found that petitioner's counsel's performance did not fall below an objectively reasonable standard of reasonableness and did not affect the jury's verdict. This was an reasonable application of the *Strickland* standard where petitioner's counsel adequately advanced the defense that the petitioner was not involved in the shooting.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ Susanne G. Reardon
Susanne G. Reardon
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200 ext. 2832
Dated: December 17, 2004          BBO No. 561669

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon the petitioner's counsel, at the address below on December 17, 2004, by depositing the copy in the office depository for collection and delivery by first-class mail, postage pre-paid, to him as follows:

Emanuel Howard, Esq.
P.O. Box 66067
Newton, MA 02466-0002

<u>/s/ Susanne G. Reardon</u>
Susanne G. Reardon
Assistant Attorney General