**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

Civil Action No. 04-10323-RWZ

**JOHN EVANS,**
       Petitioner

v.

**PAUL VERDINI, ET AL**
       Respondents.

**PETITIONER'S REPLY TO RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS**

**REPLY[1]**

**I   RESPONDENT'S STATEMENT OF FACTS IS AN ATTEMPT TO RESHAPE AND RESTRICT THE SCOPE AND NATURE OF THIS COURT'S INQUIRY [Res. Memo. Opp. at 3-7].**

The respondent's method of stating the facts begins his attempt, throughout the Res. Memo. Opp., to reshape and restrict this court's

---

[1] Petitioner has limited his reply to expose substantial misconceptions of argument, misused authority, and misapplied facts in the Respondent's Memorandum in Opposition to Petition for Writ of Habeas Corpus (Res. Memo. Opp.). His choice of topics here, however, is not to be taken as a waiver, or as an acceptance of the validity of any concept, argument, or fact contained in the Res. Memo. Opp., and petitioner trusts that the court will give due consideration to petitioner's Memorandum in Support of His Petition for Writ of habeas Corpus. References to respondent's memo will be [Res. Memo. Opp., at page number]. Petitioner will herein refer to state court materials filed with respondent's supplementary answer as follows: those to the trial transcripts will be [volume number/page number]; those to the Appendix to petitioner's primary brief filed with the Massachusetts Supreme Judicial Court will be [A. number]; those to his primary brief will be [DB page number].

inquiry. Instead of the usual recitation of the facts from the record with references to the transcript and the Appendix, the respondent presents the "facts" as set forth in the Supreme Judicial Court's *Evans* opinion, suggesting that those were determinations of facts by a state court[2], and therefore practically unassailable. If they get this court to adopt that approach, it will block the court from performing its duty to reweigh the evidence as called for by *(Terry) Williams v. Taylor*, 529 U.S. 362, (2000) (*Williams*), and it will also block the court from performing its duty under the *Brecht/Kotteakos/ Sanna/O'Neal* line of cases requiring a review of the entire record when assessing the impact of a state court's constitutional error on collateral review.[3]

Contrary to this approach, the law is otherwise. "For this purpose, facts are defined as basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators." *Bryson v. Ward*, 187 F.3d 1193, 1211 (10th Cir.1999) as quoted in *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001) (issue concerning factual determinations made by state trial court judge after evidentiary hearing on motion to suppress) (internal quotation marks omitted). A determination of facts is well outside the scope of the SJC's appellate

---

[2] "The Supreme Judicial court <u>found</u> the following facts concerning petitioner's crimes." [Resp. Memo. Opp. at 4, emphasis added]

[3] See Petitioner's Memorandum In Support of His Petition for Writ of Habeas Corpus (Pet. Memo. Support) at 10-11.

function. *Commonwealth v. Peixoto*, 430 Mass. 654, 662, 722 N.E. 2d 470 (2000), citing cases (credibility is for the jury, not for appellate courts); *United States v. Bayko*, 774 F.2d 516, 520 (1st Cir.1985) (appellate courts not equipped to try factual disputes, or to resolve credibility issues).

## II  RESPONDENT MISCONCEIVED THE ARGUMENT, MISUSED THE AUTHORITIES, AND MISAPPLIED FACTS ON PETITION GROUND ONE, THE ISSUE OF THE UNCONSTITUTIONAL EXCLUSION OF EDDIE HAWKINS' EVIDENCE [Res. Memo. Opp. at 9-12].

Respondent makes the same unreasonable mistake that the SJC made in characterizing the entire content of Hawkins' voir dire as a repudiation of what he told Detective O'Leary. See Pet. Memo. Support at 15-16. Respondent's quotation from the SJC opinion [Res. Memo. Opp. at 9] is not what the SJC "found," but merely legal conclusions based upon a selective reading of the voir dire, without accounting for what Hawkins said in other parts of the voir dire to verify contents of the O'Leary report. See Pet. Memo. Support at 15-16.

Respondent misses the point when calling for Supreme Court authority "to support his claim that he [petitioner] has an unfettered right to present evidence in support of his theory that Tinsley was the shooter." Res. Memo. Opp. at 10. Firstly, petitioner has the Sixth Amendment right to present a defense, which of course would include bringing forth evidence that another person, Tinsley, was the shooter. The Supreme Court authority petitioner discusses on this topic in Pet. Memo. Support at 14-20 speaks to the admission of relevant and

3

material evidence, and sets the precedent that "solidified an accused's right to present a defense, resulting in [one] shaped by the requirements of a fair adversarial system, and not one based merely on rules of evidence. That is, when reasonable men could disagree over the reliability of the testimony of a proposed defense witness, rather than absolute exclusion, the preferred and least restrictive way of dealing with possible unreliability is by such means as corroboration of the testimony, independent evidence, cross-examination, or jury instructions." Pet. Memo. Support at 15.

Without any supporting authority, respondent attempts to set up a hierarchy of evidence to be included or excluded based upon some degree of separation "from actual knowledge." Res. Memo. Opp. at 11-12. No one could state to a reasonable degree of probability what Hawkins would actually say before a jury. If Hawkins said under oath before a jury that Tinsley made incriminating statements to him, which were in keeping with those attributed to Tinsley in the O'leary report, those uncoerced incriminating statements of petitioner's co-defendant to a person who is not acting for the government are admissible as evidence on an equal footing with the evidence from the co-defendant eyewitness in *Washington v. Texas* cited by respondent. P. J. Liacos, *Handbook of Massachusetts Evidence* (Brodin & Avery, eds., 7th ed., 1999) at 591.

**III    RESPONDENT MISCONCEIVED THE ARGUMENT, MISUSED THE AUTHORITIES, AND MISAPPLIED FACTS ON PETITION GROUND TWO, THE ISSUE OF THE UNCONSTITUTIONAL INCLUSION OF MARVETTE NEAL'S EVIDENCE [Res. Memo. Opp. at 12 -15].**

4

Respondent misconceived the argument and misapplied the authorities in suggesting that, if petitioner claims "that Neal's testimony itself was error, this claim was not exhausted in the state court ...." Res. Memo. Opp. at 13, n. 3. Petitioner's brief to the SJC, DB at 34, cites *Commonwealth v. Rosa*, 412 Mass. 147, 162-163, 587 N.E.2d 687 (1992) which, in turn, cites federal cases invoking due process concerns offensive to fundamental fairness when testimony like Neal's is elicited at trial with intent simply to provide foundation for impeachment by prior inconsistent statement. Of course, both the Commonwealth and the trial judge knew that Neal would not be giving any substantive evidence on direct examination.

The respondent also misuses authorities when stating that the *Brecht/Kotteakos* "harmless error" standard for constitutional errors on habeas review places the burden of persuasion on petitioner. Res. Memo. Opp. at 15. The burden still remains with the prosecutor to show that the error was harmless. The discussion in the *Brecht* majority opinion speaks of the need to change for purposes of collateral review the *Chapman* harmless error standard for direct appeals on constitutional errors to the "less onerous" (for the prosecution) standard in *Kotteakos*. But the opinion does not shift the burden of persuasion from the prosecution to the petitioner. *Brecht v. Abrahamson (Brecht)*, 507 U.S. 619, 629-638 (1993). See, also, *Brecht* at 640-641 (use of *Kotteakos* standard "places the burden on prosecutors to explain why those errors

5

were harmless.") (Stevens, J. concurring). In a later case, the Supreme Court discussed this in terms of an "analogy to affirmative defenses, on which the party in the position of defendant (here the State) bears the risk of equipoise. And, to [do otherwise] would run counter to the principle of *Kotteakos* that when an error's natural effect is to prejudice substantial rights and the court is in grave doubt about the harmlessness of that error, the error must be treated as if it had a 'substantial and injurious effect' on the verdict. See *Kotteakos*, 328 U.S., at 764-765, 776." *O'Neal v. McAninch*, 513 U.S. 432, 444 (1995).

**IV  RESPONDENT MISCONCEIVED THE ARGUMENT, MISUSED THE AUTHORITIES, AND MISAPPLIED FACTS ON PETITION GROUND THREE, THE ISSUE OF THE UNCONSTITUTIONAL LIMITATION OF PETITIONER'S CROSS-EXAMINATION OF ALTON CLARKE [Res. Memo. Opp. at 15-18].**

Respondent, Res. Memo. Opp. at 16, again quotes the SJC on and mischaracterizes the quotation as a finding. The SJC quotation amounts to a legal conclusion on an abuse of discretion analysis without discussing the Sixth Amendment issue presented in Pet. Memo. Support at 32-40. It is for the habeas court to determine whether limitations on petitioner's Sixth Amendment right to cross-examine such an important witness as Clarke were justified under the circumstances. That is, whether the prosecutor's mere assertion that naming the names of the actual charges then pending against Clarke in the same county would be "disturbing and highly prejudicial" (to whom he does not say) is a strong

6

enough justification for curtailing petitioner's given constitutional rights. See Pet. Memo.Support at 38-39.

## V  RESPONDENT MISCONCEIVED THE ARGUMENT, MISUSED THE AUTHORITIES, AND MISAPPLIED FACTS ON PETITION GROUND FOUR, THE ISSUE OF INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO SEEK SEVERANCE [Res. Memo. Opp. at 18-21].

Respondent, Res. Memo. Opp. at 18, n.4 misses the point of the argument regarding the use of appellate counsel's affidavit in lieu of Brown's and Brown's trial attorney. Appellate counsel's affidavit was presented to the state courts as an offer of proof, when Brown and Brown's counsel chose not to give him affidavits affirming the facts about which they told him. Petitioner seeks affirmation and confirmation of those facts already revealed as a basis for the conclusions contained in the offer of proof he presented to the state courts. This confirmation would be made if Brown and his trial attorney, Mr. Sheketoff, and Evans' attorney, Mr. Hutton, were subpoenaed to a deposition or a hearing at which they would at least affirm, explain, and authenticate, where required, under oath the information they provided undersigned counsel. That is why petitioner requested an evidentiary hearing and submitted a motion for funds.

Petitioner, furthermore, disagrees with respondents' suggestion, Res. Memo. Opp. 19, that the standard of review under G.L. c.278, §33E is more favorable to the petitioner. While the §33E "performance prong" may be easier, in that counsel's "error" is not necessarily measured against a standard of reasonable performance, its "prejudice prong" is

7

less favorable to petitioner. Using the §33E standard, "likely to have influenced," the word, "likely" connotes a high probability of the influence; but in the *Strickland* phrase, "reasonable probability," the word, "reasonable" is a modifier that lowers the probability needed to show the influence, here, reasonable doubt.

Finally, nothing in respondent's argument in this area refers to any empirical evidence supporting the notion that "the *Wright* [*Commonwealth v. Wright*, 411 Mass. 678, 682, 584 N.E. 2d 621 (1992)] standard is more, or at least as, favorable to petitioner as the *Strickland* standard. In fact, a recent article appearing in Massachusetts Lawyers Weekly presents empirical evidence of just the opposite. The author, an experienced and accomplished criminal defense lawyer[4] writes that

> ...a statistical analysis [under his direction] of recent SJC decisions in first-degree murder cases casts substantial doubt upon the continuing vitality of Sect. 33E review. Between 1980 and 1992, inclusive, the SJC reviewed 312 first-degree murder convictions and granted some relief to the defendant in 79 cases (25 percent). In 10 of those instances, the court reduced the degree of guilt. Between 1993 and June 30, 2003, inclusive, the SJC reviewed 386 first-degree murder convictions and granted some relief to the defendant in only 36 cases (9 percent). Just once since 1993 has the court reduced a first-degree murder conviction to a lesser crime. *Commonwealth v. Ward*, 426 Mass. 290, [688 N.E. 2d 227] (1997). On their face, these statistics signify a dramatic change in the judicial landscape, which has become far less hospitable to those convicted of first-

---

[4] The short "bio." accompanying the article states that "James L. Sultan is a partner at Rankin and Sultan in Boston, concentrating in criminal defense. He has obtained reversals in four first-degree murder convictions since 1990, but none in the 21st century."

degree murder and to lawyers seeking to overturn or reduce their clients' capital convictions.

James L. Sultan, *DEMISE OF JUDICIAL REVIEW OF FIRST DEGREE MURDER CONVICTIONS*, Massachusetts Lawyers Weekly, July 21, 2003 ("Focus on" article).[5] Mr. Sultan presents two tables summarizing "in quantitative terms the dramatic decline in relief granted by the SJC in first degree murder cases over the past decade ....This powerful trend has grown even more pronounced during the past 18 months." *Id*. After presenting several possible reasons for this trend, the author states, "A more disturbing possibility is that, over the years, the SJC has come to take its extraordinary responsibilities under Sect. 33E less seriously." *Id*.

## **CONCLUSION**

Based upon the foregoing argument and petitioner's materials previously submitted, the petition for writ of habeas corpus be should be granted on a single ground or cumulative effect of two or more grounds or, in the alternative, petitioner's motions for discovery and for funds, and his request for evidentiary hearing should be granted. Petitioner also requests such other or further relief as to this court is meet and just under the circumstances.

---

[5] The article may be accessed by Massachusetts Lawyers Weekly subscribers with a user name and password at **www.masslawyersweekly.com/subscriber/archives** and by using "James AND Sultan" as the search words for documents in the year 2003.

Respectfully submitted,

JOHN EVANS, by his attorney

_____ 1/7/2005
Emanuel Howard, BBO No. 241740
P.O. Box 66067
Newton, MA 02466-0002
TEL. (617) 965-4042;  FAX (617) 965-3793

## CERTIFICATE OF SERVICE

I hereby certify that, on the date written below, I served a copy of the within document on respondent by sending it via first class mail, postage prepaid, to his counsel of record:

Susanne G. Reardon
Assistant Attorney General
Criminal Bureau
Commonwealth of Massachusetts
Office of the Attorney General
One Ashburton Place
Boston, MA  02108

_____ 1/7/2005

Evans Reply Resp's.Opp. January 2005