UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 04-10323-RWZ

**JOHN EVANS,**
Petitioner

v.

**PAUL VERDINI, et al,**
Respondents

**PETITIONER'S APPLICATION FOR CERTIFICATE OF APPEALABILITY**

John Evans, Petitioner in the above named case, hereby applies for a Certificate of Appealability (COA), 28 U.S.C. § 2253, for the following grounds in his 28 U.S.C. §2254 petition.

A. Ground one: When the Massachusetts courts absolutely excluded potentially exculpatory evidence from Eddie Hawkins, a witness called by petitioner, they violated his compulsory process clause rights by unduly elevating court-made evidence rules over those rights, thus making the sixth amendment right to present a defense superfluous as a tool of a fair process.

B. Ground two: When the trial judge, after the voir dire of a prosecution witness that made it clear that the witness (Marvette Neal) would give the jury testimony of no evidentiary value about the commission of the crime, still permitted the witness to testify over objection, such ruling violated petitioner's sixth and fourteenth amendment rights.

C. Ground Three: When the trial judge, who in the absence of *Van Ardsall* concerns, forbade accused from using, in cross-examination of Alton Clarke, a key prosecution witness, the actual names of the unrelated charges – rape, kidnapping, and assault and battery with dangerous weapon – then pending against the witness in the same county, and only permitted references to them as "serious charges, such ruling violated the accused's sixth amendment confrontation clause right to show witness bias.

**I. STANDARD FOR GRANTING A COA**. In *Slack v. McDaniel*, 529 U.S. 473 (2000), the Supreme Court sets forth the standard. A petitioner must

Case 1:04-cv-10323-RWZ   Document 27   Filed 07/27/2005   Page 2 of 11

2

"sho [w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 484 (internal quotation marks and citations omitted). The Supreme Court expounded on that standard in a more recent case, *Miller-El v. Cockrell*, 537 U.S. 322 (2003).

> This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it.... To that end, our opinion in *Slack* held that a COA does not require a showing that the appeal will succeed....It is consistent with §2253 that a COA will issue in some instances where there is no certainty of ultimate relief....We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

*Id.* 537 U.S. at 336-338 (internal quotation marks and citations omitted).

Both *Slack* and *Miller-El* were based upon the standard set forth in *Barefoot v. Estelle*, 436 U.S. 880 (1983). *Miller-El*, 537 U.S. 336-338. As will be shown in parts II, III and IV, *post*, petitioner's argument for granting the COA finds direct support in precedents of the Supreme Court. Petitioner, therefore, would be entitled to a COA under the *Barefoot* standard. *Lozada v. Deeds*, 498 U.S. 430 (1991) (per curiam).

 II.  REASONS FOR GRANTING THE COA AS TO EDDIE HAWKINS' EVIDENCE: GROUND ONE. The COA should be granted as to this ground because the trial court's error violated petitioner's Sixth

Amendment right of compulsory process and right to present a defense. Petitioner called Eddie Hawkins to the stand. Hawkins was expected to testify on incriminating statements Tinsley made to him. The statements also tended to exculpate petitioner and support his defense. The trial judge excluded the evidence.

It is unreasonable to analyze this ground, as did the SJC, by first discussing the use of Hawkins' pretrial statement—whether it is hearsay and whether it is inconsistent with relevant evidence that Hawkins would have given if permitted to testify. Petitioner's claim, first and foremost, is that he should have been permitted to put Hawkins on the stand to, at least, give the same information he gave during voir dire that was substantive evidence favorable to petitioner. The favorable evidence was that Hawkins admitted in voir dire: (a) the reason he was in MCI Concord [*10/13*]; (b) that he met Tinsley a few years before in another facility and he and Tinsley were cell mates in MCI Concord [*10/14*]; (c) that as cell mates, he had talked with Tinsley about a murder, and Tinsley was waiting to go to court on a murder charge [*10/16-17*]; (d) that he got the nickname, "45" from talking about the case with Tinsley [*10/19*]; (e) that he thinks that Tinsley told him that " he thought he might cop a plea of 18-20," but then Tinsley found that the police couldn't put him at the murder scene but could only put him in the car used to make the getaway from the scene. [*10/25*] This information certainly could have been elicited without reference to Hawkins' pretrial statement to

Detective O'Leary (O'Leary report. See Further Supp. Answer, Vol. V, Ex. 1 at 122.

Hawkins' pretrial statement would only come into play as follows. After having received the above-mentioned favorable answers, petitioner's counsel could then have asked Hawkins questions designed to give other favorable answers (having in mind, but not yet mentioning out load, the other contents of the O'Leary report). For those questions answered in a manner which tended to be inconsistent with Hawkins' statements contained in the O'Leary report, petitioner's counsel could have asked Hawkins whether he had met with Detective O'Leary in the Essex House of Correction on a certain day and whether he gave the detective information "X" (if "X" tended to be inconsistent with an answer to counsel's in-court question on "direct" before the jury). If Hawkins, in effect, denied having done so, counsel could call Detective O'Leary and ask him about Hawkins' statements to him at the Essex House of Correction on a certain day and whether Hawkins gave the detective information "X" (if "X" tended to be inconsistent with an answer to counsel's first question to Hawkins on the topic without reference to the pretrial statement, or to counsel's second question on the topic with reference to the pretrial statement). This is a similar procedure to the one employed by the Commonwealth, over objection, with respect to Marvette Neal. See Supp. Answer, Ex. 2, at 28 n. 14 and 29 n. 16, and Petition, Ground two.

If the Commonwealth's use of Marvette Neal complied with "established rules and procedure and evidence", the same rules should apply with greater force to the use of Hawkins' under petitioner's Sixth and Fourteenth rights to present witnesses in his defense. To hold otherwise would be contrary to, or an unreasonable application of, U.S. Supreme Court precedent. *Crane v. Kentucky*, 476 U.S. 683, 687 (1986); *Washington v. Texas*, 388 U.S. 14, 19 (1967). These rights are necessary to ensure that the accused is not deprived of a fair trial. *Id.* at 17-19; *Chambers v. Mississippi*, 410 U.S. 284, 302-303 (1973). The United States Supreme Court set out only two requirements for the presentation of a defense witness's testimony: that it be "relevant" and "material" to the defense. *Washington v. Texas, supra*, 388 U.S. at 23. This leaves the "credit and weight of such testimony to be determined by [the factfinder]." *Id.* at 22 (internal quotation marks omitted).

Lastly, petitioner respectfully states that any notion that that the trial judge's ruling did not foreclose petitioner to "have Hawkins verify certain of his pretrial statements" [Memorandum of Decision, July 13, 2005, at 4] is an unreasonable determination of the record of the State court proceeding. 28 U.S.C. § 2252(d)(2). In fact, this is what happened. Overriding trial counsel's argument to let the jury decide what credit and weight they would give to Hawkins' testimony [10/28-30], the trial judge ruled over objection that, "I'll permit you to put this witness [Hawkins] on the stand for the sole purposes of asking [him] whether or not he had a

conversation with Mr. Tinsley regarding the allegations before this court. He can answer yes or no. You are not to go into the content of that statement…" [10/31]. And on the next transcript page, in response to an objection by Mr. Giblin, Tinsley's counsel, "to Mr. Hawkins even being allowed to testify in this matter," suggesting that "[i]t just leaves an implication in the jurors' minds that in this conversation something might have been said," the judge said: "It leaves them nowhere. If you want to put him on to say he had a conversation, that's it." [10/31] Petitioner's counsel continued argument in order to remove that restriction, but the judge said with finality, "….Bring the jury down. You can ask him his name, you can ask him whether he had a conversation, yes or no, that's it. [10/34] On that basis, petitioner declined to call Hawkins, and rested his case. [*10/34*]¹

In light of the above, the COA should be granted for ground one because the Sixth and Fourteenth Amendment issues in this ground are at least "debatable even though every jurist of reason might agree, after

---

¹ Petitioner respectfully disagrees with the Court's characterization of his statement [at Pet.'s Mem. at 20], by the Court's calling it a "bald assertion … without further explanation." Memorandum of Decision, July 13, 2005, at 4. Petitioner's assertion comes at the very end of the argument on Ground one, and is introduced by the phrase, "<u>As the foregoing discussion shows</u>," and <u>then</u> continues, " the state court's decision is contrary to, and an unreasonable application of relevant Supreme Court precedent in *Crane v. Kentucky*, 476 U.S. 683, 687 (1986); *Washington v. Texas*, 388 U.S. 14, 17-19 (1967);. *Chambers v. Mississippi*, 410 U.S. 284, 302-303 (1973); *Rock v. Arkansas,* 483 U.S. 44, 55 (1987); *Arizona v. Fulminante*, 499 U.S. 279, 297-300 (1991)." (Emphasis supplied.)

the COA has been granted and the case has received full consideration, that petitioner will not prevail."

### III. REASONS FOR GRANTING THE COA AS TO MARVETTE NEAL'S EVIDENCE: GROUND TWO.

For purposes of discussion, petitioner presented to the SJC, in several stages, the information the Commonwealth made use of in connection with Marvette Neal. But the method, means, and total content of Neal's information was orchestrated to have an impact favorable to the Commonwealth – regardless of whether it came directly from him, or through Detective Dorch, or through the grand jury court reporter. The Commonwealth's ploy, or guise, was to first get Neal on the stand on direct examination before the jury, have him admit, or deny, or claim no memory of, certain things, impeach him while still on "direct" with his prior statements, then bring in Detective Dorch to further impeach him, and then bring in the grand jury court reporter.

But one first must return to the problem petitioner's counsel had in cross-examining Neal. Because of the many pre trial things Neal denied saying and, more importantly, could not remember saying, petitioner's counsel could not effectively cross-examine Neal.

Petitioner presented the SJC with the federal aspect of this ground as follows.

> Here, Neal did not remember: seeing the Evans brothers at Cortees or telling that to the grand jury (*4/ 175-176,180)*;

> seeing the Evans brothers inside Walaikum's or telling that to the grand jury. (*4/ 181-182, 184)* The defendant, therefore, could not effectively cross-examine Neal as to the accuracy of those statements read to the jury because Neal had no memory of making them and did not remember the facts underlying the statements. "Where a witness has no present memory as to the substance of the prior statement, its admissibility is generally precluded because opposing counsel would not have an opportunity for meaningful cross-examination of the witness at trial." *Commonwealth v. Martin*, 417 Mass. 187, 197 (1994). <u>A meaningful and effective cross examination is required by arts. 10 and 12 of the Massachusetts Declaration of Rights and the Sixth and Fourteenth Amendments to the United States Constitution.</u> *Commonwealth v. Michel, supra,* 367 Mass. 459-460; *Commonwealth v. Johnson, supra.*, 365 Mass. 543-544. <u>Where there was an objection on a matter involving defendant's constitutional rights</u>, the Commonwealth bears the burden to show that the error was harmless beyond a reasonable doubt. *Chapman v. California, supra.* 386 U.S. 24; *Commonwealth v. Sires, supra.* 413 Mass. 297. The Commonwealth cannot do so.

Supp. Answer, Ex. 2 at 36.[2] (Emphasis supplied.)

Where the petitioner fairly represented the claim to the state court "to make it probable that a reasonable jurist would have been alerted to the existence of the federal question," *Scarpa v. DuBois*, 38 F.3d 1, 6 (1st Cir. 1994), the federal courts must address it, even though the state court did not. See, also, Pet.'s Mem. at 27-31 (parts I and J).

---

[2] The petitioner cited the *Commonwealth v. Michel* and *Commonwealth v. Johnson* cases in an earlier section of his brief, as follows: "<u>Article 12 of the Massachusetts Declaration of Rights, and the Sixth and Fourteenth Amendments to the United States Constitution give criminal defendants rights to effective cross-examination </u>of such a witness. *Commonwealth v. Michel*, 367 Mass 454, 459-460 (1975), *Commonwealth v. Johnson*, 365 Mass. 534, 543-544 (1974), <u>each citing Massachusetts and federal court cases on cognate constitutional rights</u>." Supp. Answer, Ex. 2 at 21. (Emphasis supplied.)

In light of the above, the COA should be granted for ground two because the Sixth and Fourteenth Amendment issues in this ground are at least "debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail."

**IV. REASONS FOR GRANTING THE COA AS TO ALTON CLARKE'S EVIDENCE: GROUND THREE**. The COA should be granted as to this ground. This is a question about the approach to given constitutional rights about which reasonable jurists might disagree, and some might agree with petitioner that the SJC got this wrong too.

There is no doubt that Clarke was a very important witness against the petitioner. The Sixth and Fourteenth Amendments gave him the right to cross-examine Clarke to show bias – a motive to give favorable evidence for the Commonwealth. Petitioner should not be limited <u>unless</u> there is a sufficient legitimate state interest to act as a counterweight against those rights. *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Such legitimate counterweights (reasons to exclude cross-examination questions) are set forth in *Van Arsdall*. The trial judge may be permitted to exercise his discretion <u>only</u> when presented with such a counterweight. Neither the trial judge nor the SJC articulated a legitimate state interest as a reason to exclude the naming of Clarke's pending charges in John's cross-examination. Restrictions on John's cross-examination rights without a legitimate

reason are arbitrary, *Rock v. Arkansas, supra*, 483 U.S. 56, and thus are abuses of discretion requiring reversal.

"Factors that the Supreme Court has deemed relevant [on the balancing of interests] are the importance of the evidence to an effective defense, *Davis v. Alaska,* 415 U.S. 308, 319, (1974); the scope of the ban involved, *Van Arsdall,* 475 U.S. at 679; and the strength *vel non* of state interests weighing against admission of the evidence. *See Chambers v. Mississippi,* 410 U.S. 284, 295 (1973). Even if a state rule of exclusion is generally defensible, ….it may on particular facts be applied to produce an unconstitutional infringement. See [*Michigan v.*] *Lucas,* 500 U.S. [145 (1991)] at 152-53." *White v. Coplan* (*White*) 399 F.3d 18, 24 (1st Cir. 2005). Here, the naming of names of the charges Clarke was facing had a specific, rather than general, bearing on credibility evidence. The naming of names of the charges Clarke was facing would give the jury the opportunity to understand the full nature of the potential "bribe" Clarke might be expecting for his favorable testimony. "Evidence suggesting a motive to lie has long been regarded as powerful evidence undermining credibility, and its importance has been stressed in Supreme Court confrontation cases. *See Olden v. Kentucky,* 488 U.S. 227, 231 (1988) (per curiam)…." *White,* 399 F.3d at 26 (other citations omitted). "No time-consuming excursion beyond the witness would be required. Further, the [names] being conceded to be [true], inquiry would not require the witness to admit to [those crimes]." *White,* 399 F.3d at 25.

Although Clarke testified that he was promised nothing for his testimony, that answer did not convey to the jury an answer to the question <u>whether he entertained any hope while testifying for lenity after he testified</u>. Petitioner should have been permitted under the above-cited cases to name the names of the crimes, so that the jury could decide whether to believe Clarke. "There is no Supreme Court case directly on all fours, but AEDPA requires no such thing. It is enough if the Supreme Court's general principles can be discerned and if, respectfully but with confidence, [the Court of Appeals would] think that failure to allow the evidence on the facts before [the Court] would be an unreasonable application of those principles." *White*, 399 F.3d at 25.

In light of the above, the COA should be granted for ground three because the Sixth and Fourteenth Amendment issues in this ground are at least "debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail."

Respectfully submitted,
John Evans
by his attorney,


/s/Emanuel Howard
_____
EMANUEL HOWARD; BBO# 241740
P. O. Box 66067
Newton, MA  02466-0002
TEL:  (617) 965-3042

July 27, 2005                      Evans Application Certificate of Appealability USDC-/s/ July 2005